IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JIM W. MCCOLLUM                                                                                    PLAINTIFF

v.                              Case No. 2:12-CV-02034

SHELTER MUTUAL INSURANCE COMPANY                                         DEFENDANT

**ORDER**

Currently before the Court is Plaintiff Jim W. McCollum's Motion for Attorneys' Fees (Doc. 28) and Defendant Shelter Mutual Insurance Company's ("Shelter") Response and supporting brief (Docs. 29-30). On March 20, 2013, the Court entered an Order directing the parties to provide further briefing on the issue of attorneys' fees. That same day, a motion hearing was set for April 9, 2013. The parties' counsel (as well as Mr. McCollum) appeared at the hearing and were afforded the opportunity to present their arguments regarding the pending Motion.

The jury trial of this matter began on February 11, 2013. At the completion of the two-day trial, the jury found in favor of Mr. McCollum on his claims.

By agreement of the parties, the jury did not consider what damages were to be awarded to Plaintiff, Mr. McCollum. Rather, the parties agreed that the Court would determine the amount of any damages to be awarded. The parties agree that Mr. McCollum's property was a total loss and that he is entitled to receive the policy limits of the Dwelling Insurance Policy issued to him by Shelter ("the Policy") of $100,700.00 for the dwelling and $10,000 for personal property. The parties further agree that Shelter is entitled to a credit or set-off in the amount it paid to the mortgagee listed in the Policy of $55,256.44. Finally, the parties also agree that an award of a 12% statutory penalty pursuant to A.C.A. § 23-79-208(a)(1) and an award of 6% prejudgment interest is

appropriate in this case. The parties disagree, however, as to whether that set-off should be awarded prior to or subsequent to the assessment of the statutory penalty and prejudgment interest. Although Shelter did not dispute Mr. McCollum's request for costs in its briefs, Shelter took the position at the hearing that Mr. McCollum should not be awarded any costs incurred related to payment of his expert witness. Finally, although the parties agree that an award of attorneys' fees is appropriate in this case, they disagree as to the amount that should be awarded. The Court will take up each of the various points of contention in turn.

### I.   Statutory Penalty

The Court finds the 12% statutory penalty should be calculated based on the full amount of the loss, prior to application of the set-off. The full amount of the loss was in controversy up until the jury delivered its verdict in favor of Mr. McCollum. Any payment to the mortgagee pursuant to the Policy was not made for Mr. McCollum's benefit, but rather was a fulfillment by Shelter of its separate obligations to the mortgagee under the Policy and, as intended by the terms of the Policy, a means by which Shelter could gain an assignment of the mortgage encumbering Mr. McCollum's property. Even now, Mr. McCollum's property is encumbered by that mortgage. Shelter undoubtedly wished to leave open the window of opportunity, in the event that it prevailed in this litigation, to either collect on the mortgage from Mr. McCollum or, in the event of a default, pursue any avenues available under the mortgage to recover funds from the value of the property. So, although Shelter made a payment to the mortgagee under the Policy, and Shelter argues that such payment was timely, the Court finds that the nature of the payment was such that it did not protect Shelter from imposition of the statutory penalty provided for under Arkansas law; specifically, the payment was not made for the benefit of the insured, but rather, was made subject to terms that left

Mr. McCollum's property encumbered as well as left him open to future claims by Shelter against either him personally and/or his property.

Section 9(e) of the Policy provides "[i]f [Shelter] has no obligation to pay you [Mr. McCollum] on a claim made under this policy, we will pay any mortgagee . . . *if* that person assists us in becoming either the owner of the right to receive your payment, or the subrogee of his, her, or its right to receive your payment . . ." Shelter determined that it did not have an obligation to pay Mr. McCollum for the fire loss to his dwelling. Mr. McCollum maintained that Shelter did have an obligation to pay and, in the face of Shelter's refusal, was forced to bring his claims before this Court. Ultimately, the jury determined that Shelter was wrong, and that Shelter did have an obligation to pay Mr. McCollum. In light of the jury's finding, Shelter's payment to the mortgagee pursuant to provision 9(e) of the Policy was in error. Rather, Shelter should have paid the mortgagee in the amount of its insurable interest *without* reservation and not subject to any terms detrimental to Mr. McCollum's interest.

The relevant terms of the Policy in this case are not materially different from the terms of the policy in *Warren v. State Farm Fire and Cas. Co.*, a case in which the defendant insurance company was represented by the same defense firm involved in this case and in which the plaintiff similarly prevailed on her lawsuit to collect payment from the insurance company after a fire destroyed her home. 2007 U.S. Dist. LEXIS 21545 (E.D. Ark. Mar. 26, 2007).[1] As in this case, the insurance

---

[1] Shelter cites to this case in its brief filed March 1, 2013 for a couple of propositions: (1) that the equitable doctrine against double recovery applies to the issue of set-off, and (2) that the statutory penalty provided for by Ark. Code Ann. § 23-79-208 is directed against unwarranted delaying tactics of insurers. (Doc. 30, pp. 3-4). It does not appear that Mr. McCollum, in this case, would take issue with either of those propositions, nor does the Court. Those statements were made in *Warren* in the context of (1) determining whether set-off was appropriate *at all* and (2) determining whether the plaintiff should be allowed to amend her complaint so that she might be

company in *Warren* was entitled to a set-off for payment made to the plaintiff's mortgagee; the mortgagee was paid shortly after the mortgagee made demand by a proof of loss;[2] pursuant to the policy at issue, the insurance company retained either a subrogation interest to all rights of the mortgagee under the mortgage or an assignment of the mortgage; the insurance company maintained throughout trial that no payment was owed to the plaintiff under the Policy; and the jury found in favor of the plaintiff. *Id.*

The Court recognizes that it does not appear that the parties in *Warren* made any argument as to whether the statutory penalty should apply to the full amount of the loss or, rather, should be limited in application to the amount of loss after set-off. Rather, the focus of the dispute in that case was whether the plaintiff could be considered to have recovered the full amount of the loss, without accounting for the set-off, in order to calculate whether the plaintiff had recovered within 20% of the amount sought and was therefore entitled to receive any statutory penalty. *See* A.C.A. § 23-79-208(d)(1) ("Recovery of less than the amount demanded by the person entitled to recovery under the

---

able to recover a statutory penalty by establishing that she had recovered within 20% of her request. Neither of those issues are in dispute in this case. Mr. McCollum agrees that Shelter is entitled to a set-off. Further, the parties agree that Mr. McCollum is entitled to the Policy limits on his damages. This is not a case where Mr. McCollum was in the wrong by demanding an excessive amount, prompting the insurance company to resist payment. Rather, Shelter maintained throughout trial that it had no liability to Mr. McCollum on the Policy, regardless of the amount claimed. Shelter did not cite *Warren* for the proposition that the Court finds most relevant to this case (and adverse to Shelter's interests), which is that the statutory penalty should be paid on the full amount of the loss.

[2] In fact, the mortgagee in *Warren* was paid within 14 days of making demand by proof of loss. 2007 U.S. Dist. LEXIS 21545 at *26. In the instant matter, the mortgagee was issued a check approximately two months after demanding payment. The first check, however, was not cashed by the mortgagee for reasons unknown to the Court. Shelter issued a new check, which was eventually redeemed in December of 2012. The Court makes no finding as to whether such timing would otherwise have been reasonable under circumstances different from the instant case.

policy shall not defeat the right to the twelve percent (12%) damages . . . if the amount recovered for the loss is within twenty percent (20%) of the amount demanded or which is sought in the suit."). Although the reason behind the respective arguments in *Warren* and in the instant matter are different, the outcome sought is essentially the same—a court determination that the plaintiff's recovery in each case does not include the amount designated for set-off. Here, Shelter does not argue that Mr. McCollum did not recover within 20% of the amount he sought. However, Shelter does argue that, for purposes of applying the statutory penalty and prejudgment interest, Mr. McCollum's recovery should essentially be limited to the amount he will receive individually under the Policy.

  The Court agrees with the reasoning of Judge Eisele in *Warren*, that "although Defendant eventually paid the mortgage under the policy, the Plaintiff was not at that point relieved of the mortgage obligation." 2007 U.S. Dist. LEXIS 21545 at *27. Under the Policy, "during the pendency of the litigation, Plaintiff's obligations were never completely eliminated, but simply shifted from one creditor to another." *Id*. at *29. Mr. McCollum has yet to receive the full benefit of his Policy, and will not receive the full benefit until Shelter releases any interest it now holds in the mortgage. The jury in this case found that Mr. McCollum was entitled to receive payment from Shelter on his claim. The parties have agreed that Mr. McCollum sustained a loss in an amount reaching the policy limits. Shelter's payment to the mortgagee, encumbered as it was with terms and conditions, cannot be deemed to have been made in satisfaction of Mr. McCollum's valid claim. The Court, therefore, cannot find that Shelter's payment to the mortgagee was a timely and proper payment for purposes of Ark. Code Ann. § 23-79-208.

Arkansas state law is clear that the statutory penalty is intended to benefit the holder of the insurance policy. A.C.A. § 23-79-208 (insurance company "liable to pay the *holder of the policy . . . twelve percent (12%) damages . . .*"); *Farm Bureau Mut. Ins. Co. of Arkansas, Inc. v. Foote*, 341 Ark. 105, 124 (2000) (holding that statutory penalty is payable to the insured regardless of whether the late payment is made to the insured or another loss payee) (citing *Farmers Mut. Ins. Co. v. Lane*, 278 Ark. 53 (1982)). The Court finds, therefore, that the 12% statutory penalty is to be applied to the full amount of the loss of $110,700 for a total penalty award of $13,284.00, with that amount to be made a part of the judgment awarded to Mr. McCollum.

**II.     Prejudgment Interest**

Mr. McCollum is entitled to an award of prejudgment interest in this case, as his damages were "definitely ascertainable by mathematical computation." *Ozarks Unlimited Resources Coop., Inc. v. Daniels*, 333 Ark. 214, 224 (1998). The Court awards prejudgment interest to compensate a party for recoverable damages wrongfully withheld from the time of loss until entry of judgment. *Id.* The parties have agreed that the time of loss in this case is July 2011 and that the applicable interest rate is six percent (6%). Ark. Const. Art. 19 § 13(d)(i) ("The rate of interest for contracts in which no rate of interest is agreed upon shall be six percent (6%) per annum.").

It appears to the Court that Mr. McCollum would never have collected interest on the amount to be paid to the mortgagee under the Policy, regardless of whether the mortgagee was paid outright or whether Shelter gained a subrogation interest or assignment. The Court finds, therefore, that compensation to Mr. McCollum for interest lost on any amount paid by Shelter to the mortgagee is not necessary. Mr. McCollum should receive prejudgment interest only on the net judgment award (not including attorneys' fees or the statutory penalty).

The Court calculates the prejudgment interest from July 31, 2011,[3] at a rate of 6%, on the amount of $55,443.56.[4]  Based on those figures, the Court calculates that Mr. McCollum is entitled to an award of prejudgment interest in the amount of $5,650.69.

### III.  Costs

Although Shelter did not object to Mr. McCollum's request for costs in the two rounds of briefing on this issue, at the hearing, counsel for Shelter argued that, under Arkansas law, expert witness fees are not recoverable as costs against the losing party.  Federal law, however, generally "control[s] the reimbursement of expert witnesses in federal courts sitting in diversity jurisdiction." *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1168 (9th Cir. 1995) (stating that its holding was in accord with, and citing to, decisions in the 10th, 11th, and 1st Circuits).  Nothing about this case suggests to the Court that the cost requests by Mr. McCollum are made pursuant to a more substantive provision of Arkansas law that might override the applicability of federal procedural law regarding costs.

Under federal law, expert witness fees must be calculated by reference to the fees and expenses authorized for ordinary witnesses pursuant to 28 U.S.C. § 1821 and § 1920.  *Mo. Dep't of Elem. & Secondary Educ. v. Springfield R-12*, 258 F.3d 992, 1002 (8th Cir. 2003).  Title 28 U.S.C.

---

[3] The parties agree that prejudgment interest should begin to accrue in July 2011, but do not provide a date certain.  The date of the fire that destroyed Mr. McCollum's house was May 20, 2011.  The Court has been unable to find, upon review of the record, a date certain for when Mr. McCollum submitted his claim to shelter (although presumably it was shortly thereafter).  Accounting for some time for Mr. McCollum to file his claim, and in the absence of a date certain provided by the parties, the Court finds July 31, 2011, to be a reasonable starting point for calculating the accrual of prejudgment interest.

[4] This amount represents the combined Policy limits for real and personal property ($110,700) minus the amount Shelter paid to the mortgagee for which it is to receive a credit on the judgment ($55,256.44).

§ 1920(3) provides for taxation of witness fees as costs, and 28 U.S.C. § 1821(b) limits witness fees to a $40 per fee for each day's attendance as well as an attendance fee for the time spent traveling to and from the place of appearance. The trial in this case lasted two days. Allowing for Mr. McCollum's expert's attendance during both days, as well as a fee for his travel to and from the courthouse, the Court finds that it is constrained to awarding $160 in costs to Mr. McCollum for his expert witness fees. Shelter has not objected to Mr. McCollum's other two cost items totaling $365. The Court finds, therefore, that Mr. McCollum is entitled to an award of costs in the total amount of $525.00.

## IV. Attorneys' Fees

In their initial submissions to the Court, the parties appeared to agree that the Court should award Mr. McCollum his attorneys' fees based on the contingency fee contract Mr. McCollum had with his counsel.[5] As noted by the Court in its previous Order (Doc. 31), however, the proper method for calculating attorneys' fees is through consideration of certain recognized factors set forth in *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227 (1990). While there is no fixed formula in determining the computation of attorneys' fees, courts should be guided by factors that may include the following: (1) the experience and ability of the attorneys, (2) the time and labor required to perform the legal service properly, (3) the amount involved in the case and the results obtained, (4) the

---

[5] The parties continued to cling somewhat to that argument in their subsequent briefs to the Court and at the hearing. Mr. McCollum's counsel did, however, put forward argument pursuant to the relevant factors. Shelter's counsel simply recognized that Mr. McCollum was entitled to some attorneys' fees and reiterated Shelter's position that a fee amount of around 40% of Mr. McCollum's recovery (not including the set-off amount) would be reasonable. Shelter's counsel also argued that $15,000 in attorneys' fees seemed to them to be a fair offer, although the Court notes that 40% of Mr. McCollum's recovery minus set-off (and not accounting for penalty or interest) is $22,177.34.

novelty and difficulty of the issues involved, (5) the fee customarily charged in the locality for similar services, (6) whether the fee is fixed or contingent, (7) the time limitations imposed upon the client or by the circumstances, and (8) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.  304 Ark. at 229-30. Therefore, while the contingent nature of the fee arrangement with a client should be a part of the Court's analysis, a lawyer's contract with a client cannot be dispositive of the attorneys' fees analysis.  *See Southall v. Farm Bureau Mutual Ins. Co. of Arkansas, Inc.*, 283 Ark. 335 (1984) ("Automatic acceptance of a lawyer's contract with a client would be an abdication of [the Court's] duty to supervise the conduct of the bar and do justice to the losing as well as to the winning side").

At the outset, the Court notes that this is not a traditional contingency fee situation in which a plaintiff's attorney seeks to deduct his or her fee directly from an award to the plaintiff.  Rather, in this case, Mr. McCollum's attorneys are requesting the Court to award *statutory* attorneys' fees to be paid by Shelter.  Shelter was not a party to the contract between Mr. McCollum and any of his attorneys and, therefore, they are not bound by any such contract.  Nor is the Court bound by the contract in determining the amount of fees that should be paid by Shelter in compliance with Ark. Code Ann. § 23-79-208(a)(1).  Whether, and in what manner, Mr. McCollum's counsel plans to collect any fee from Mr. McCollum under a contingency fee contract has no bearing on the Court's calculation of statutory attorneys' fees in this case apart from taking into account the contingency nature of the arrangement generally.  The Court must, however, consider the percentage agreed to in determining whether an award of attorneys' fees must be capped.  A statutory fee awarded pursuant to Ark. Code Ann. § 23-79-208(a)(1) "is not the property of the attorney; instead, it is indemnity to the litigant.  Thus, the fee awarded should not exceed the amount that the client is

responsible for paying, otherwise the statute would be susceptible to abuse. The purpose of the statute is not to provide a windfall to attorneys, rather, it is to permit the insured to obtain competent representation." *Phelps v. United States Life Credit Life Ins. Co.*, 340 Ark. 439, 443 (2000).

Mr. McCollum's attorneys submitted an estimate[6] of 113.5 hours spent on this case by Mr. Ray Hodnett, with a notation stating that such calculation does not include hours for co-counsel Ms. Carrie Jernigan. Mr. McCollum's attorneys assert that Ms. Jernigan spent a comparable amount of time on the case. The time estimated by Mr. Hodnett appears reasonable to the Court. Ms. Jernigan was present for the entire trial and participated in the litigation of this case, and Mr. Hodnett argued at the hearing that Ms. Jernigan spent as much time on the case as he did. The Court finds it reasonable to estimate that Ms. Jernigan spent a comparable amount of time on the case, and finds that a total of 227 hours spent preparing this case represents a reasonable amount of time expended to properly perform the legal services required, especially considering the nature of the case.

While the legal issues involved in this case were not novel, the case was heavily fact-intensive and required exhaustive exploration and investigation of the circumstances surrounding the fire. Mr. McCollum and his attorneys were facing an insurance company with substantially more resources than Mr. McCollum. The case involved the denial of an insurance claim based on Shelter's determination that Mr. McCollum set fire to his own house. Mr. McCollum was, therefore, faced with the challenge of proving a negative to the jury—that he did not set fire to his house—and

---

[6] Mr. McCollum's attorneys admittedly did not keep detailed billing statements in this case, citing to the fact that the case was taken on a contingency fee basis, which is a common practice in this area in cases of this nature. It is understandable that a plaintiff's attorney litigating in the hopes of successfully obtaining a contingency fee would not bill hours in the same way as defense lawyers getting paid by the hour or a plaintiff's attorney billing against a retainer. The estimate submitted in this case appears to have been thoughtfully prepared and not an attempt to inflate time to take advantage of the opportunity to prepare a bill subsequent to services rendered.

finding a way to discredit the insurance company's expert. Mr. McCollum also had to invest in his own expert, at a cost of $4,716.94, and present that testimony at trial. Mr. McCollum had to scour his personal and business financial records to refute Shelter's claim that he was motivated to burn his own house for financial reasons. Mr. McCollum also had to delve into child support records and personal issues stemming from a divorce that occurred some years ago. His character and morality were called into question by Shelter, and Mr. McCollum was forced to defend himself before a jury.

This case involved an amount in controversy of $110,700 under the Policy. While that amount may not seem large to some, it is not insignificant. Mr. McCollum's attorneys were successful in garnering a verdict in their client's favor in a case that was aggressively litigated by Shelter.

The Court finds that both attorneys are experienced and have performed their duties capably in this case. The undersigned is familiar with the rates generally charged by attorneys in the local area, and finds that a rate of $200 per hour is reasonable for attorneys with the experience and ability of Mr. Hodnett and Ms. Jernigan. Multiplying 227 hours by a rate of $200 per hour results in a lodestar amount of $45,400.

The Court finds that this amount should be adjusted upwards to account for the risk assumed by Mr. Hodnett and Ms. Jernigan in taking this case on a contingency basis. Both attorneys invested significant time and resources in this case in litigating on behalf of Mr. McCollum, without any guarantee that their efforts would be rewarded. Plaintiffs' attorneys should be encouraged to take on the causes of those persons, such as Mr. McCollum, who are not able to afford a hefty retainer but who nevertheless should not be denied access to the remedies available via the justice system. The Court further finds that the remaining *Chrisco* factors—the time limitations imposed upon the

client or by the circumstances, and the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer—do not weigh heavily in the balance in this case, in which the Court is considering fees to be paid by Shelter and not by Mr. Hodnett and Ms. Jernigan's client.  However, the Court will note that Mr. McCollum appears to have been highly involved in assisting his counsel in preparing and litigating this case.

Having considered the factors relevant to an award of statutory attorneys' fees in this case, the Court finds that Mr. McCollum should be awarded his attorneys' fees in the amount of $51,853. This award represents a reasonable amount based on the time spent by Mr. Hodnett and Ms. Jernigan on this case multiplied by a customary rate, with adjustments made in consideration of the other *Chrisco* factors, particularly considering the contingency nature of the arrangement between Mr. McCollum and his counsel.  The Court notes that the amount of attorneys' fees awarded also represents 40 percent of the amount awarded in damages, statutory penalty, and prejudgment interest in this case, which means that Shelter will not be forced to pay an amount in excess of that needed to indemnify Mr. McCollum for payment of his attorneys in this case.

## V.     Other

Post-judgment interest will accrue at the prevailing legal rate of 0.13% per annum from the date of entry of judgment until paid.  *See* 28 U.S.C. § 1961; *Mobil Exploration & Producing North America, Inc. v. Graham Royalty Ltd*, 910 F.2d 504, 509 (8th Cir. 1990) (in actions based on diversity of citizenship, post-judgment interest rate is determined according to 28 U.S.C. § 1961 and not Ark. Code Ann. § 16-65-114).

## VI.    Conclusion

IT IS THEREFORE ORDERED that Mr. McCollum's Motion for Attorneys Fees (Doc. 28) is GRANTED as set forth above.

Judgment will be entered accordingly.

IT IS SO ORDERED this 11th day of April, 2013.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE